William A. SMITH, Claimant–Appellee,

v.

Jesse BROWN, Secretary of Veterans Affairs, Respondent–Appellant.

No. 93–7043.

United States Court of Appeals, Federal Circuit.

Aug. 12, 1994.

William D. Mallard, Jr., Mallard & Minor, Atlanta, GA, argued, for claimant-appellee.

Jeri Kaylene Somers, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for respondent-appellant. With her on the brief were Stuart

E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were Donald E. Zeglin and Nicole Sideris, Dept. of Veterans Affairs, Washington, DC, of counsel.

Gershon M. Ratner and Roberta L. Valente, Nat. Veterans Legal Services Project, Washington, DC, were on the brief, for amicus curiae, The American Legion.

Before RICH, MICHEL, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

The Secretary of Veterans Affairs appeals the decision of the United States Court of Veterans Appeals (Veterans Court) in *Smith v. Principi,* 3 Vet.App. 378 (1992), holding that otherwise final decisions of the Board of Veterans Appeals (Board) are subject to collateral review for "clear and unmistakable error" (CUE) under 38 C.F.R. § 3.105(a) (1993). Because the Veterans Court misinterpreted § 3.105(a), we reverse.

## I

We have jurisdiction over this appeal by virtue of 38 U.S.C. § 7292 (Supp. IV 1992), which vests this court with the limited authority to review Veterans Court decisions on pure questions of law, *see id.* § 7292(c) (i.e., "any challenge to the validity of any statute or regulation or any interpretation thereof"), and those factual or mixed questions that raise constitutional issues, *see id.* § 7292(d)(2). We may judge this appeal notwithstanding the pending remand ordered by the Veterans Court, because this remand order constitutes a final and appealable judgment. *See Travelstead v. Derwinski,* 978 F.2d 1244, 1249 (Fed.Cir.1992) (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)).

Our standard of review is set out at § 7292(d)(1). That provision commands that this court "shall decide all relevant questions of law" and "hold unlawful and set aside any regulation or any interpretation thereof ... relied upon in the decision of the Court of Veterans Appeals" held to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The only issue in this appeal is

whether § 3.105(a) subjects otherwise final Board decisions to review for CUE and, if so, whether the regulation is unlawful for conflict with the statutes governing the finality of Board decisions. This is a question of legal interpretation we review de novo, *see Prenzler v. Derwinski,* 928 F.2d 392, 393 (Fed.Cir.1991), applying the two-step test articulated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 866, 104 S.Ct. 2778, 2781–82, 2793, 81 L.Ed.2d 694 (1984), because our review of Veterans Court judgments entails the review of underlying agency action.

## II

The question we face lies near the end of a long trail that one veteran has followed seeking benefits for various serious medical ailments. William A. Smith served on active duty from February 1952 to January 1956. Smith's medical records reveal treatment from 1956 through the 1980s by Veterans Administration (VA) hospital physicians and private physicians for, among other things, back disability and cervical spine disability. In March 1980, Smith applied to the VA Regional Office (RO) in Atlanta, Georgia (an agency of original jurisdiction (AOJ)) for benefits, claiming entitlement to service connection for a back injury. Service connection was subsequently established for residuals of a back injury, with lumbosacral strain and lower back syndrome, degenerative disc disease with spondylosis. Smith's adverse health conditions were rated at 60% disabling and Smith became entitled to commensurate benefits. In November 1980, Smith resigned his job as a maintenance employee at Savannah State College because of his back condition. Thereafter, Smith returned to the RO, claiming a total disability rating based on individual unemployability by reason of his service connected disability. Following a hearing before a rating board in July 1982, Smith's claim for total disability was denied. Smith appealed that decision to the Board.

The Board on July 1, 1983, affirmed the rating board's decision on Smith's total disability claim. At subsequent rating board hearings, Smith complained of continuing back problems, as well as multiple joint pains

in the shoulder, neck, knees, and hands. Those ailments culminated in a claim of entitlement to service connection for disabilities in his knee, spine, middle back, shoulder and hands and arthritis of the joints. Smith's claim was denied by the RO, but on appeal to the Board was remanded in April 1986 to the RO for further development of the medical evidence. After review of the additional evidence, first the RO and then the Board on August 8, 1986, again denied Smith's claim for service connection to the asserted disabilities. On August 18, 1986, Smith requested reconsideration by the Board of its August 8 decision on the grounds that it contained error. The Board granted Smith's request for reconsideration. In an opinion and decision dated July 10, 1987, the Board examined the alleged errors cited by Smith and concluded that none constituted reversible error. In rejecting Smith's allegations of error, the Board noted that reconsideration of its decisions may be accorded at any time on request by the veteran alleging obvious error of fact or law in the Board decision, or on the Board's own motion to correct an obvious error in the record.

With respect to his cervical spinal and shoulder disabilities, Smith again attempted to establish service connection in 1988 and 1989, claiming that new and material evidence established the necessary service connection. The RO and Board, however, concluded that Smith had failed to assert any such new and material evidence. Consequently, on June 20, 1989, the Board denied Smith's request to reopen the spine and shoulder disability claims earlier decided finally by the Board on July 10, 1987. ·

On September 6, 1989, Smith again applied to the RO to reopen his twice denied claim for service connection for his cervical spine disabilities and his once denied claim for a total disability rating based on individual unemployability. On January 4, 1990, the RO concluded that Smith had failed to adduce any new and material evidence to establish a relationship between his service connected lower back disability, rated at 60%, and a cervical spine condition. The RO also concluded that Smith's service connected disability did not render him unemployable. Smith appealed these two adverse decisions to the Board. His appeal also contended that the

Board had committed CUE in its June 20, 1989, decision denying Smith's request to reopen his previously denied claim to service connection for the cervical spine disability. The CUE alleged was the Board's failure to appreciate the meaning of testimony given by a doctor at a RO hearing which Smith contended would establish the necessary service connection.

The Board on March 11, 1991, affirmed the RO's denial of Smith's claim to enhanced disability rating on account of the cervical spine ailment and his claim to a 100% disability rating due to the asserted unemployability that the lower back ailment alone had caused. The Board characterized Smith's allegation of CUE as an assertion of obvious error, such as Smith had alleged in his formal request for reconsideration of the Board's August 8, 1986, decision. But since Smith had made no formal request for reconsideration because of obvious error, the Board ruled that the allegations of error in its June 20, 1989, decision were not properly before it and rendered no decision thereon.

Smith appealed the March 11, 1991, decision of the Board to the Veterans Court. In a memorandum decision, Associate Judge Steinberg concluded that Smith's cervical spine disability claim, to the extent it sought an increased disability rating for his previous service connected disability, was not properly before the Veterans Court because it had not been raised as such before the Board. *Smith,* 3 Vet.App. at 380. As for the cervical spine disability claim alone, the Veterans Court · affirmed the Board's denial because Smith had adduced no "new and material evidence" to warrant reopening of the claim denied in the Board's June 20, 1989, decision. *Id.* at 380–81. The Veterans Court determined that the Board erred, however, in failing to consider all the relevant evidence on Smith's claim to total disability on account of service connected disability. *Id.* at 380–81. Remand was also ordered regarding Smith's contention that the Board erred in 1991 by not adjudicating his contention that the Board's June 20, 1989, decision was based on CUE. *Id.* at 381. The Veterans Court held that the Board is required under 38 C.F.R. § 3.105(a) (1994) to adjudicate con-

tentions that it has committed CUE in rendering previous decisions which have since become final. *Id.* The Secretary petitioned for reconsideration of the memorandum decision but reconsideration was denied by a panel of the Veterans Court on December 23, 1992. The Secretary then appealed to this court.

### III

The Veterans Court's discussion and resolution of the question now on appeal is contained in a single paragraph of its decision:

> However, the veteran clearly did raise to the Board a claim that the Board in 1989 had committed clear and unmistakable error by failing then to consider relevant medical evidence of record supporting his claim for service connection for the cervical spine disability.... Therefore, the Board was required to adjudicate that claim and determine whether the 1989 [Board] decision contained clear and unmistakable error requiring revision under 38 C.F.R. § 3.105(a) (1991). *See Russell v. Principi,* [3 Vet.App. 310, 312–14, 318–20] (1992) (consolidated with *Collins v. Principi,* No. 90–416) (Board required to adjudicate claim of clear and unmistakable error in prior Board decision's failure to consider all the evidence); *EF v. Derwinski,* 1 Vet. App. 324, 326 (1991) (Board must address all issues reasonably raised to it by appellant). Therefore, remand is required for the Board to consider whether clear and unmistakable error was committed in the 1989 [Board] decision denying the veteran's claim for service connection for a cervical spine disability.

*Smith,* 3 Vet.App. at 381. The decisions in *Russell* and *Collins,* however, do not support the conclusion of the Veterans Court in this case that § 3.105(a) subjects Board decisions to CUE review. In *Russell,* the veteran timely appealed to the Veterans Court from a 1990 decision in which the Board declined to consider the veteran's claim that the AOJ had committed CUE in one of *its* previous adjudications. The Veterans Court held that "the Board committed prejudicial error in its 1990 decision here on appeal by failing to decide the clear-and-unmistakable-error issue as to the 1972 RO decision." *Russell,* 3 Vet.App. at 319. The alleged CUE in *Rus-*

*sell* had been committed *by the RO,* not the Board, and the Veterans Court was not deciding that an otherwise final decision of the Board is subject to subsequent review for CUE in the Board decision under § 3.105(a). The error of the Board in *Russell* was not CUE, but the simple failure to have considered a ground that was advanced to it on appeal from a decision by the agency of original jurisdiction. The Board's legal duty to address the issues before it is clearly established, and the Veterans Court in *Russell* cited its decision in *Oppenheimer v. Derwinski,* 1 Vet.App. 370, 372 (1991), for that proposition. In *Oppenheimer,* the Board had also failed to consider fully an issue before it, and in emphasizing its duty to do so, the Veterans Court cited its decision in *Akles v. Derwinski,* 1 Vet.App. 118 (1991), and 38 C.F.R. § 19.123(a) (1990), which directs the Board to "construe ... arguments [made by the veteran] in a liberal manner for purposes of determining whether they raise issues on appeal." *Russell* thus stands only for the unexceptionable proposition that the Board must render a decision on allegations of CUE committed by an agency of original jurisdiction.

In *Collins,* the widow of a veteran was denied death pension benefits in a 1978 RO decision. She was successful in reopening her claim on the basis of new and material evidence in 1989, and she was awarded benefits effective in 1989. The widow, however, contended that the denial of her benefits in 1978 was due to CUE committed then by the RO, and that she consequently should have an effective benefit entitlement date of 1978. On appeal to the Board, she raised her CUE contention, and the Board without citing reasons or bases concluded that no CUE had been committed by the RO in 1978. *See Russell,* 3 Vet.App. at 321. Consequently, the Veterans Court vacated the Board's decision in *Collins* and remanded the case for an "explanatory statement of the reasons or bases [as] required by 38 U.S.C. § 7104(d)(1)." *Id.* at 322. As in *Russell,* the alleged CUE in *Collins* was committed by the RO, and the Board's failure was only in not articulating its reasons for finding against the widow on her CUE contention, as required by § 7104(d)(1).

We have no occasion to agree or disagree with the holdings in *Russell* and *Collins* that an allegation of CUE committed by a RO is subject to adjudication by the Board, that the Board's failure to adjudicate such an issue when raised on appeal to the Board constitutes legal error, and that on timely appeal to it, the Veterans Court has jurisdiction to remand such cases to the Board for adjudication of the claim that the RO has committed CUE. Since *Russell* and *Collins* do not address the question whether § 3.105(a) subjects otherwise final Board decisions to review for CUE allegedly committed by the Board, they are unhelpful to us. We must therefore answer the question on appeal without guidance from the Veterans Court. In addition, since the Secretary appeals only from the remand order requiring application of CUE to Board decisions, and not from the part of the remand order requiring reconsideration of Smith's total disability claim, the latter issue is not before us, and we consequently express no view on it.

### IV

Before proceeding to an explication of the arguments made on appeal by the Secretary, Smith, and The American Legion, appearing as amicus curiae, we pause to sketch the background of statutes and regulations pertinent to this appeal.

Veterans initiate claims for benefits by filing a claim at an AOJ, normally the nearest RO. 38 U.S.C. §§ 5101–5103 (Supp. IV 1992). Upon the veteran's request, the RO holds a hearing at which the hearing officer and other DVA personnel assist the veteran in developing and shaping his claim. After the hearing, or in any event if no hearing is held, the AOJ issues a written decision informing the veteran of the outcome of the claim, stating the reasons for the decision and the right of the veteran, should his claim be denied, to file a Notice of Disagreement (NOD) to initiate the process of appellate review. 38 C.F.R. § 3.103(f). A NOD is defined as any writing "expressing dissatisfaction or disagreement with an *adjudicative determination* of an agency of original jurisdiction." 38 C.F.R. § 20.201 (emphasis added).

The filing of a NOD triggers a reexamination of the claim at the AOJ. 38 U.S.C. § 7105(d)(1) (Supp. IV 1992). If disagreement persists, the appellate machinery moves forward, with the AOJ assisting the veteran in preparing a Statement of the Case (SOC) to present to the Board. The SOC contains a summary of the evidence and factual issues, a statement of the applicable statutes and regulations, and a discussion of their application to the facts. The SOC also sets out the AOJ's determinations on each of the issues that were determined adversely to the veteran. The veteran then selects the issues upon which he seeks to appeal to the Board, and specifies arguments relating to errors of fact or law made by the AOJ in reaching the determination being appealed.

Regardless of whether a hearing is held, the Board is obliged to consider all the arguments made by the veteran and to construe those arguments liberally in determining whether the veteran has raised any appealable issues. 38 C.F.R. § 20.202 (1993). Decisions by the Board are contained in a written statement of the Board's findings and conclusions and the reasons and bases for them. 38 U.S.C. § 7104(d)(1) (Supp. IV 1992). A Board decision must inform the veteran of his right to appeal to the Veterans Court. *Id.* § 5104(a).

As a general proposition, decisions of the Board are final. 38 U.S.C. § 7103(a) (Supp. IV 1992). The finality of a Board decision of course may be disturbed on appeal to the Veterans Court, which reviews questions of law de novo, 38 U.S.C. § 7261(a)(1) (Supp. IV 1992); *see* section I above, and questions of fact under a clearly erroneous standard, 38 U.S.C. § 7261(a)(4); *see generally* 2 Steven Alan Childress & Martha S. Davis, *Federal Standards of Review* §§ 15.02–.04 (2d ed. 1992). The decisions of the Board are also subject to reconsideration. Section 7103(a) of Title 38 vests the Chairman of the Board with discretionary reconsideration authority, while § 7103(c) authorizes "the Board on its own motion" to "correct an obvious error in the record." Furthermore, in another exception to the general rule of finality, Congress has provided that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the

former disposition of the claim." *Id.* § 5108. Otherwise, "when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." *Id.* § 7104(b).

The regulations concerning reconsideration and finality of Board decisions are contained in Subparts K (Reconsideration) and L (Finality) of 38 C.F.R. part 20, (Board of Veterans' Appeals: Rules of Practice). Subpart K defines the circumstances in which reconsideration may be accorded:

Reconsideration of an appellate decision may be accorded at any time by the [Board] on motion by the appellant or his or her representative or on the Board's own motion:

(a) Upon allegation of obvious error of fact or law;

(b) Upon discovery of new and material evidence in the form of relevant records or reports of the service department concerned; or

(c) Upon allegation that an allowance of benefits by the Board has been materially influenced by false or fraudulent evidence submitted by or on behalf of the appellant.

38 C.F.R. § 20.1000 (1993). The regulation concerning reconsideration thus expounds upon the Chairman's discretionary statutory authority to order reconsideration. In addition to alleged factual or legal errors, a limited source of new and material evidence may provide the basis for reconsideration.

Subpart L specifies in § 20.1100(a) that unless the Chairman of the Board orders reconsideration, with exceptions not applicable to this case, all Board decisions are final on the date stamped on the face of the decision, as are decisions on reconsideration. "Final" decisions may be reopened, however—as opposed to reconsidered—under 38 U.S.C. § 5108, on the grounds of new and material evidence which is "presented or secured with respect to a claim which has been disallowed." Neither § 5108 nor the regulation concerning the reopening of disallowed claims, 38 C.F.R. § 20.1105, contain any limitation on the sources of new and material evidence, unlike the regulation on the Board's discretionary authority to reconsider otherwise final decisions.

The regulation at the heart of this appeal, 38 C.F.R. § 3.105(a), and its companion, § 3.104(a), are not found in Part 20 concerning the Board and finality of its decisions. Rather, § 3.105(a) is contained in part 3, entitled "Adjudication," and more particularly under the rubric "Administrative." Section 3.104(a) ("Finality of Decisions") reads:

A decision of a duly constituted rating agency or other agency of original jurisdiction shall be final and binding on all field offices of the Department of Veterans Affairs. . . . A final and binding agency decision shall not be subject to revision on the same factual basis except by duly constituted appellate authorities or except as provided in § 3.105 of this part.

Section 3.105(a) ("Revision of decisions") reads:

*Error.* Previous determinations which are final and binding, including decisions of service connection, degree of disability, . . . line of duty and other issues, will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision.

The gist of this case is whether the words "previous determinations which are final and binding" and "decisions" in § 3.105(a) include determinations and decisions of the Board. We turn now to the argument of the parties on this question.

V

The Secretary observes that Congress has provided expressly that Board decisions shall be final except in the circumstances of reconsideration at the order of the Chairman or when a veteran's claim is reopened under 38 U.S.C. § 5108 because of "new and material evidence." In addition, the Secretary emphasizes that once a veteran's claim is disallowed by the Board, § 5108 expressly precludes the Board from considering a claim

"based upon the same factual basis" of the disallowed claim, except pursuant to the Board's discretionary power, conferred by statute and implemented by regulation, to reconsider its decisions. The Secretary also notes that the veteran is free at any time either to allege at an AOJ that a prior, unappealed AOJ decision contains CUE, or to adduce new and material evidence to compel the *reopening* of that claim.

Further, the Secretary points out that §§ 3.104 and 3.105 lie in the body of regulations governing "adjudications" at the AOJ level and thus apply only to AOJ decisions. To hold otherwise, the Secretary argues, would create the anomaly of empowering trial-level adjudicators to collaterally review the final decisions of their appellate authorities, perhaps even on cases on which they themselves had been reversed. Besides, applying the CUE standard in § 3.105(a) to Board decisions would render redundant the procedure for the reconsideration of previous Board decisions expressly provided by 38 U.S.C. §§ 7103 and 7104 and the regulations promulgated thereunder, and more important, would conflict with the congressional intent to make reconsideration discretionary. In sum, the Secretary, citing 2A Norman J. Singer, Sutherland's Statutory Construction § 52.01 (5th ed. 1992), contends that Smith's proposed interpretation of § 3.105(a) fails to harmonize with the whole of the statutory and regulatory framework concerning finality of AOJ and Board decisions.

Smith and amicus, on the other hand, assert that a straightforward application of the plain meaning rule, *see, e.g., Weddel v. United States*, 23 F.3d 388, 391–92 (Fed.Cir.1994) (collecting cases), to the language of § 3.105 standing alone compels this court to adopt the contrary interpretation and hold Board decisions subject to review for CUE—the Secretary's interpretation to the contrary notwithstanding, *see, e.g., Estate of Cowart v. Nicklos Drilling Co.*, —— U.S. ——, ——, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992) (no deference to agency interpretation that conflicts with unambiguous text); *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 685–86, 88 L.Ed.2d 691 (1986) (same). They reason that since the words "decisions" and "determinations" appear in the CUE provision without any express qualification that might limit the scope of their coverage, and since the part of the regulations in which § 3.105 is located bears the general heading "Adjudication," we have no choice but to hold that § 3.105(a) provides for mandatory CUE review of all final adjudicatory decisions, original and appellate alike. As a policy matter, we are urged to accept that this interpretation is most consistent with and in furtherance of the uniquely pro-claimant principles underlying the veterans' benefits dispensation scheme. In particular, amicus notes the suspension of the normal rules of res judicata, collateral estoppel, and limitation of actions in this area inasmuch as a veteran who has had a claim adjudicated may: (1) at any time petition the Board for reconsideration of an unappealed and thus otherwise final appellate decision; (2) with respect to an unappealed AOJ decision denying a claim, return to the AOJ and secure review for CUE in that decision; or (3) present new and material evidence bearing on the denied claim and thereby compel its reopening. Amicus contends that subjecting otherwise final Board decisions to mandatory review for CUE committed by the Board does not conflict with any statutory requirements for finality of Board decisions. Tellingly, Smith and amicus do not rely on the Veterans Court's decisions in *Russell* and *Collins*.

## VI

The interpretation that Smith and amicus would put on § 3.105(a)—that absent an express limitation as to their scope, the words "determinations" and "decisions," and "adjudication" *must* be taken in their general sense, and thus necessarily include Board as well as AOJ rulings—is dictated by the plain meaning rule only if the provision for CUE review is read in isolation, torn from the context of the surrounding provisions, the structure of the code, the logic of the administrative-judicial review scheme, and the history of amendments to the language over the years. The law, however, forbids such a narrow focus. "Language ... cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word

is analyzed in light of the terms that surround it." *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993). The Supreme Court has cautioned "over and over again" that " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law....' " *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* —— U.S. ——, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)). " '[T]he court will not merely look to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such construction as will carry into execution the will of the legislature....' " *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (quoting *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857)); *see, e.g., MCI Telecommunications Corp. v. AT & T,* —— U.S. ——, ——, 114 S.Ct. 2223, 2229, 129 L.Ed.2d 182 (1994) ("contextual indications" may point clearly to one dictionary definition among conflicting alternatives (e.g., whether the broader or narrower sense is the intended meaning), thus overriding any agency position to the contrary) (citing *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819)). Only by such full reference to the context of the whole can the court find the plain meaning of a part. The goal is to identify "that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law ... because it is our role to make sense rather than nonsense out of the *corpus juris.*" *West Va. Univ. Hosps. v. Casey,* 499 U.S. 83, 100–01, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991). "Slicing a statute into phrases while ignoring their contexts—the surrounding words, the setting of the enactment, the function a phrase serves in the statutory structure—is a formula for disaster." *Herrmann v. Cencom Cable Assocs., Inc.,* 978 F.2d 978, 982 (7th Cir.1992). *See generally Matter of Sinclair,* 870 F.2d 1340, 1341–42 (7th Cir.1989). The canons of construction of course apply equally to any legal text and not merely to statutes. *See Black & Decker Corp. v. Commissioner of Internal Revenue,* 986 F.2d 60, 65 (4th Cir.1993) ("Regulations, like statutes, are interpreted according to the canons of construction."); *see, e.g., Campesinos Unidos, Inc. v. United States Dept. of Labor,* 803 F.2d 1063, 1069–70 (9th Cir.1986) (applying whole act rule to regulation).

■ We now apply these principles to the case at hand. To begin with, the structure of the regulation casts considerable light on whether the general terms "adjudication," "determination," and "decision" must be limited in their application to the original stage of veterans' benefits proceedings. *See National R.R. Passenger Corp. v. Boston & Maine Corp.,* —— U.S. ——, ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) (clues can be derived from structure as well as language); *see, e.g., United States National Bank,* —— U.S. at ——, 113 S.Ct. at 2183 (same). Title 38 of the Code of Federal Regulations ("Pensions, Bonuses, and Veterans' Relief") contains "all [of the] current regulations of the Department of Veterans Affairs." 38 C.F.R. ix (1993). The title is broken down into different parts that cover different subjects. The CUE subsection resides not in a part applicable to the VA as a whole, nor in Part 19, entitled "Board of Veterans' Appeals: Appeals Regulations," nor in Part 20, entitled "Board of Veterans' Appeals: Rules of Practice." It is found in Part 3, which in terms of *decisions* on Veterans claims refers only to decisions by rating boards and other agencies of original jurisdiction. It does not seem reasonable to impute to the drafters of the regulation an intent to have the CUE provision apply to Board decisions when they addressed adjudication at the AOJ level and at the Board level in entirely different parts of the regulation and mentioned CUE review only in the part governing AOJ adjudication, in a section addressing the finality of AOJ decisions.

■ Section 3.104(a) says that "final and binding agency decision[s]" are "not ... subject to revision on the same factual basis except by ... appellate authorities *or* except as provided in § 3.105." (Emphasis added). This is highly significant. First, the disjunc-

tive "or" draws a clear distinction between the sort of revision made by "appellate authorities"—i.e., the Board—and that "provided in § 3.105(a)." This suggests that a § 3.105(a) revision is something different from a revision made by the Board, because otherwise the reference to "appellate authorities" would be "mere surplusage, entirely without meaning." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 174, 2 L.Ed. 60 (1803); *accord Black & Decker,* 986 F.2d at 65 (interpreting regulation) (citing *Jay v. Boyd,* 351 U.S. 345, 360, 76 S.Ct. 919, 928, 100 L.Ed. 1242 (1956)). Second, and more importantly, the quoted language actually links § 3.104(a) to § 3.105(a). Thus, § 3.104(a)'s specific reference to "agenc[ies] of original jurisdiction" directly controls and limits, under the principle of *noscitur a sociis* ("it is known from its associates"), the general terms "decision" and "determination" in § 3.105(a). *See* 2A Sutherland's Statutory Construction § 47.16, at 183–84; *see, e.g., Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 305, 314–15, 81 S.Ct. 1579, 1581, 1585–86, 6 L.Ed.2d 859 (1961) (The word "discovery" in a tax statute giving special treatment to income "resulting from exploration, discovery, or prospecting" did not include income from patented articles, because the context restricted the coverage of the general term to the discovery of mineral resources.). The immediate textual context of § 3.105(a) provides another clue to the meaning of "other adjudicative decision" in the CUE provision. Section 3.104 is generically styled "Finality of Decisions," and it expressly mentions only those decisions that issue from "agenc[ies] of original jurisdiction" and does not mention those issued by appellate authority. The canon of *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of others"), fairly applicable in this situation, compels the inference that only original decisions are covered in § 3.104(a).

In sum, the words "final and binding" in § 3.104(a) refer only to rating Board or other AOJ decisions, and such decisions are subject to revision on the same factual basis only by "duly constituted appellate authorities," such as the Board, or "as provided in § 3.105 of this part." In a common sense reading of § 3.105(a), the words "previous determinations which are final and binding" obviously

relate and refer back to "a decision of a duly constituted rating agency or other agency of original jurisdiction" in § 3.104. Smith's reading, however, can make sense only if we ignore the existence and meaning of § 3.104(a). We decline to read § 3.105(a) divorced from the immediate and the broader textual context in which it is found.

The broader context includes the history of the regulatory language, which provides still more evidence to support this conclusion. *See Smither & Co. v. Coles,* 242 F.2d 220, 222 (D.C.Cir.) (the "history of the development" of the relevant code language provides additional intrinsic evidence of intent), *cert. denied,* 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957); *see also United States v. Thompson/Center Arms Co.,* —— U.S. ——, ——, 112 S.Ct. 2102, 2108, 119 L.Ed.2d 308 (1992) (examining the various changes the relevant language had undergone over time); *compare Darby v. Cisneros,* —— U.S. ——, ——, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993) (extrinsic evidence of intent (e.g., legislative history materials) is properly considered only if the intrinsic evidence yields no clear answer); *Wisconsin R.R. Comm'n v. Chicago, Burlington & Quincy R.R.,* 257 U.S. 563, 589, 42 S.Ct. 232, 237–38, 66 L.Ed. 371 (1922) (same). Earlier incarnations of what is now § 3.105(a) expressly stated that CUE review could be had only of decisions rendered by agencies of original jurisdiction. The first version of the regulation read:

> No *rating board* will reverse or amend, except upon new and material evidence, a decision rendered by the same or any other *rating board,* ... *or* of any *appellate authority* ...: *Provided,* That the *rating board* may reverse or amend a *decision by* the same or any other *rating board* where such reversal or amendment is obviously warranted by a clear and unmistakable error shown by the evidence in file at the time the prior decision was rendered....

Veterans' Bureau Reg. 187 § 7155 (1928) (emphasis added), *superseded without amendment by* Veterans' Bureau Reg. 1074 (1930), *superseded by* Veterans' Admin.Reg. 1009(A) (1936) (making technical amendments and adding the heading "Revision of Rating Board Decisions") (codified at 38

C.F.R. § 2.1009(a) (1939) (first edition of the C.F.R.)), *redesignated as amended,* 38 C.F.R. § 3.9(a) (1949). From 1928 to 1955, the regulations clearly specified that only decisions of rating boards, not those of appellate authorities such as the Board, were subject to review for CUE. In 1955, the regulation was amended to add language to include adjudicative agencies that were neither rating boards nor appellate authorities:

> REVISION OF DECISIONS. No rating board or other agency of original jurisdiction will reverse or amend, except upon new and material evidence, a decision rendered by the same or any other rating board, adjudicative agency or by an appellate authority ...: Provided, That a rating board or other adjudicative agency may reverse or amend a decision by the same or any other rating board or adjudicative agency where such reversal is obviously warranted by clear and unmistakable error shown by the evidence in file at the time the prior decision was rendered.

38 C.F.R. § 3.9(a) (1955). The change in language in 1955 simply took note of the fact that rating boards were not the only form of AOJ. Beyond accommodation of that point, the amendments in 1955 made no change to the earlier regulations, which uniformly limited CUE review to decisions made by AOJs and expressly denied AOJs any authority to review decisions by appellate authorities for CUE. The 1955 amendments, however, established a distinction between "adjudicative agency" and "appellate authority."

In 1959, the regulation was cast nearly in the form now existing:

> *Error.* Previous determinations on which an action was predicated including decisions of service connection ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended.

38 C.F.R. § 3.105(A) (1959). In 1959, the predecessor of § 3.104(a) under the heading of "Finality of Decisions" stated, as it does now, that the "decision of a duly constituted rating board or other agency of original jurisdiction" is "final and binding" and subject to review only by duly constituted appellate authorities or pursuant to the regulation requiring revision of decisions for CUE cited above.

The language in § 3.105 was amended for the last time in 1961 by deleting the words "on which an action was predicated" to describe "[p]revious determinations," instead defining such determinations as those "which are final and binding." *See* 26 Fed.Reg. 1569 (1961). This change brought § 3.104(a) and § 3.105(a) to the language which is now in effect and relevant to the issue in this appeal, and which we have examined in detail above. The history of the regulation clearly is consistent with and supports the Secretary's reading of § 3.105(a).

■■■ The Secretary's regulatory interpretation also seems more harmonious with both the language of the statute governing the finality of Board decisions and the logic of the adjudicatory scheme Congress has created to dispense veterans benefits. *See Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 152, 152–53, 154–57, 111 S.Ct. 1171, 1176–77, 1177–79, 113 L.Ed.2d 117 (1991) (inference of intent on unaddressed question drawn from the logic of the administrative structure). We have earlier described the veterans claim process, which amicus correctly observes provides "special privileges not available to ordinary litigants." It is of course true that courts are to construe remedial statutes liberally to effectuate their purposes. *See, e.g., Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977); *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91–92, 98 L.Ed. 5 (1953). Veterans benefits statutes clearly fall in this category. *See, e.g., King v. St. Vincent's Hosp.,* 502 U.S. 215, —— n. 9, 112 S.Ct. 570, 574 n. 9, 116 L.Ed.2d 578 (1991); *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 2104–05, 65 L.Ed.2d 53 (1980); *see also* 38 C.F.R. § 3.102 (1993) (veterans benefits law to be administered "under a broad interpretation"). But a canon of broad construction comes into play only if the meaning of the text is doubtful. Otherwise, there is no room for such construction, and the court must give effect to the clearly expressed intent of the legislative authority. *See, e.g., Weddel,* 23 F.3d at 391–92 (textual language pre-

sumed to embody drafters' intent). Smith cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision. Moreover, the logic of the administrative structure tends the other way.

Congress has considered the degree to which Board decisions shall be final. It has provided expressly in § 7103 that Board decisions are final unless the Chairman of the Board exercises his discretion to order reconsideration. Smith's interpretation of § 3.105(a) as entitling veterans to challenge otherwise final Board decisions for CUE would create a procedural overlap in the adjudicatory structure which furthermore would be flatly inconsistent with the congressional intent to make that type of review *discretionary*. At oral argument, both sides agreed that there is no *substantive* difference in the standard of review for CUE as opposed to "obvious error." The only real difference is that CUE review can be invoked as of right, whereas review for obvious error is committed to the sound discretion of the Board. Even if we were to conclude that § 3.105(a) is otherwise ambiguous, we nevertheless would be constrained to hold that the Secretary's position is clearly what Congress and the regulatory drafters intended, because Smith's proposed construction would create a redundancy that reasonably could be avoided, *see* section VI above (citing *Marbury* ), and furthermore, would at least raise a serious question as to the consistency of § 3.105(a) with the statute governing the finality of Board decisions. *See LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Management Comm'n,* 866 F.2d 616, 623 (3d Cir.1989) (regulations must be construed to avoid conflict with a statute if fairly possible); *cf. National Labor Relations Bd. v. Catholic Bishop of Chicago,* 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533 (1979) (statute "ought not be construed to violate the Constitution if any other possible construction remains available") (citing *Murray v. The Charming Betsy,* 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804) (Marshall, C.J.)).

Furthermore, in the administrative structure Congress has created, the Board is an appellate authority, and the AOJs are trial-level adjudicators. This too tends to preclude the inference that the drafters of § 3.105(a) intended CUE review to apply to both Board and AOJ decisions, since it would, oddly, permit an inferior to collaterally review the actions of a superior, at least as an initial matter. Smith has suggested no possible interpretation by which a claim for relief because of CUE in a Board decision could be filed originally with the Board, an appellate authority.

## VII

Smith in the end acknowledges the plausibility of the Secretary's interpretation, but contends that it is not entitled to deference in view of the inconsistent positions taken by the Department's Office of General Counsel (OGC), which is authorized to issue regulatory interpretations that are binding on the Board. 38 U.S.C. § 7104(c). In particular, Smith points to the following language in OGC Precedent Opinion 68–91:

> Generally, once a claim for benefits has been denied, and either the [Board] has rendered a final decision, or the time for appeal [to the Board] has expired without an appeal, the decision on the claim is final and the claim cannot be allowed or reopened except on the basis of new and material evidence. 38 U.S.C. §§ 5108, 7104(b), and 7105(c) (formerly 38 U.S.C. §§ 3008, 4004(b), and 4005(c)). However, claimants for veterans' benefits are specifically relieved of this finality burden under certain circumstances by, among other provisions, 38 C.F.R. 3.105(a). . . .

Smith contends that the "However" sentence amounts to an opinion by the General Counsel that the finality of Board decisions is undone by § 3.105(a). But Smith reads the "However" sentence in the same fashion that he reads § 3.105(a), that is, by ignoring the context in which the sentence is found. The General Counsel's opinion concerned the question whether a RO had committed CUE in denying a veteran a 30% disability rating when the evidence before the RO clearly established entitlement to that percentage. Immediately following the language in the opinion quoted by Smith is the sentence "This case involves whether the failure to award the Rating Schedule's minimum rating

of 30% for multiple sclerosis in 1949 amounts to 'clear and unmistakable error.'" The legal question to be decided in the opinion was whether if such CUE had been committed in 1949, the veteran could have the error corrected in 1991 despite the passage of time. The General Counsel concluded in favor of the veteran on both issues. In the context of the whole opinion, the quoted language merely supplied the unquestionable proposition that RO decisions always can be challenged for ancient CUE. The opinion is in no way inconsistent with OGC Precedential Opinion 11–90, which states that "[t]here is no question that other than in a reconsideration setting, prior [Board] decisions will be considered final and a different outcome can only be reached if an 'obvious error' is identified or new and material evidence is obtained." Opinion 11–90 simply states the conclusion that is reached on reading the longstandingly consistent regulations concerning finality of Board decisions.

 Furthermore, even if Smith were right that there is a conflict in the body of general counsel opinions, the Secretary has resolved any such conflict by adopting the substance of OGC 11–90 as the policy of the Department of Veterans Affairs. Thus, even if the meaning of § 3.105(a) on the question were doubtful, Smith still could not prevail, since in that event we would have to defer to the Secretary's contrary position. *See Chevron,* 467 U.S. at 842–43, 866, 104 S.Ct. at 2781–82, 2793; *accord United States v. Vowell,* 9 U.S. (5 Cranch) 368, 372, 3 L.Ed. 128 (1809) (Marshall, C.J.); *see also Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. at 156–57, 111 S.Ct. at 1178–79 (formal Secretarial interpretations command deference regardless of the form they assume so long as they are not mere "litigating positions" or "*post hoc* rationalizations") (citations and internal quotation marks omitted). Conversely, Smith could not prevail even if the Secretary had adopted his proposed interpretation, since neither the Secretary nor this court has any power to contradict, under the guise of "interpretation," a valid regulation. *See Estate of Cowart,* — U.S. at —, 112 S.Ct. at 2594; *Dimension Financial,* 474 U.S. at 368, 106 S.Ct. at 685–86; *Maryland Casualty Co. v. United States,* 251 U.S. 342, 349, 40 S.Ct.

155, 157–58, 64 L.Ed. 297 (1920) (valid regulations have the full force and effect of statute law).

## VIII

We thus conclude that the Secretary correctly interpreted the CUE review authority in § 3.105(a) as relating only to review of AOJ adjudicatory decisions and not to those of the Board. The judgment of the Veterans Court on the issue appealed is accordingly

REVERSED.