**Norman MYKLES, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–187.**

United States Court of Veterans Appeals.

Feb. 6, 1995.

Andrew R. Shoemaker, William A. Roberts, and James D. Villa, Howrey & Simon, Washington, DC, were on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and A.M. Fent, Washington, DC, were on the brief, for appellee.

Before FARLEY, MANKIN, and IVERS, Judges.

IVERS, Judge:

Norman Mykles, through counsel, appeals from a January 11, 1993, Board of Veterans' Appeals (BVA or Board) decision which denied reopening of his claim for Legg–Perthes disease in the left hip for lack of new and material evidence. *Norman Mykles,* BVA 93–00506 (Jan. 11, 1993). However, on appeal the appellant does not argue the denial, he instead presents a claim of clear and unmistakable error (CUE) in prior BVA decisions. Appellant's Brief and Reply Brief. The Secretary argues that the appellant has abandoned the new and material evidence portion of his appeal, that the appellant failed to raise the CUE claim with sufficient specificity before the Board, and that the 1993 BVA decision regarding CUE is not arbitrary and capricious. Secretary's Brief.

The appellant argues that the BVA violated the rule set forth in *Thurber v. Brown*, 5 Vet.App. 119 (1993), when it cited a medical treatise without providing him with prior notice. Appellant's Reply Brief at 9. The Secretary contends that any error is harmless because the treatise was cited to support the denial of a prior BVA decision. Secretary's Brief at 24. The Court will address the issues presented in the parties' briefs and will consider any additional issues adjudicated before the BVA and not presented for our review as abandoned. *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993) (appellant considered to have abandoned an issue on appeal where the appellant listed several issues in his Notice of Appeal and statement of issues filed, but in his pleadings and at oral argument, his request for relief was limited to one claim). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). The Court holds that the decision of the Board regarding the *Thurber* issue is harmless error and will dismiss the appellant's claim that CUE occurred in prior RO and BVA decisions, as the Court finds that this allegation does not survive as a viable claim in light of the recent decision of the United States Court of Appeals for the Federal Circuit in *Smith v. Brown*, 35 F.3d 1516 (Fed.Cir.1994).

## I. FACTS

The appellant served in the United States Army from June 1942 to April 1946. Record (R.) at 20. The medical examiner noted during the appellant's induction examination that a "weak hip bone" existed and that the left leg was a "little shorter than the right leg." R. at 304. On June 6, 1942, during basic training, the appellant complained of pain in his left hip and the examiner diagnosed him with arthralgia as a result of a congenital deformity. Arthralgia is pain in a joint. DORLAND'S ILLUSTRATED MEDICAL DESK DICTIONARY 147 (27th ed. 1988) [hereinafter DORLAND'S]. The examiner noted that the condition was permanent and would interfere "with his performance of the full duties of a soldier." *Id.* He was assigned to limited duty. R. at 28. The appellant went to officer candidate school and then served in the European and Pacific theaters as a supply officer. R. at 59, 61, 268. Medical and lay

testimony was submitted by the appellant which indicated that he performed the normal duties for his position, and both medical and lay statements noted an aggravation of his condition in service. R. at 79, 211, 270, 298–99.

In June 1948 the appellant applied for service connection for his hip disorder. R. at 58–61. In October 1948 the regional office (RO) conceded that the appellant's condition was service aggravated and granted a 10% rating. R. at 107. In October 1956 the appellant indicated that he had had hip surgery and that his private physician noted a "50% loss of motion with 1 inch shortening of [the] left lower extremity." R. at 119. The appellant filed for an increased rating. R. at 126. In February 1957 the RO determined that the prior grant of service connection was in error because the appellant's condition was due to a natural progression of the disease rather than aggravation in service and informed the appellant that VA proposed to sever service connection. R. at 138, 140. In response to VA's notice of intent to sever the appellant's service connection status, the appellant submitted a letter from his treating physician, Dr. Horace Pitkin, which stated that the onset of the appellant's condition was at the age of eight, and that Dr. Pitkin agreed with the opinion of two other physicians, Drs. Luckey and Nielsen, who stated in 1947 that the appellant's military service accelerated the onset of his symptoms. R. at 147. In October 1957 the RO evaluated Dr. Pitkin's letter but determined that it did not add any "new and material evidence for the maintenance of service connection for Legg[-]Per[th]e's disease" and discontinued the benefits. R. at 150, 152. The appellant appealed to the BVA, a hearing was held, and in April 1958 the BVA denied restoration of the benefits, holding that the June 1948 RO decision, which granted those benefits, contained clear and unmistakable error. R. at 156, 168, 174.

The appellant contacted his congressional representative in 1963, and an investigation of the claim ensued. R. at 177–200. In December 1963 an expanded BVA panel reconsidered the decision and affirmed the April 1958 BVA decision. R. at 219–23. In

1964 the appellant attempted to reopen his claim by submitting a statement from Colonel (retired) William Neilson, who was a supply depot surgeon when the appellant worked on the depot staff. R. at 232. Dr. Neilson stated that in his professional opinion, the appellant's preexisting hip condition was aggravated by his military service because the appellant often performed duties beyond the "limited service" status he was assigned. *Id.* In March 1964 the RO denied reopening. R. at 235, 237, 239. The appellant filed a Notice of Disagreement and a Statement of the Case was issued. R. at 241, 247–48. An appeal to the BVA followed. R. at 255. The appellant submitted a letter from his treating physician, Dr. Paul Klabunde, stating that the disease process preceded the appellant's induction into service, and that the condition of "[m]alum coxae senilis" usually occurs in older individuals "due to the usual wear and tear of life on a diseased femoral head." R. at 263. Malum senilis is a disease of a joint which is painful and degenerative; the coxa is a part of the body which is lateral to and includes the hip joint. DORLAND'S at 392, 976. Additional affidavits were submitted from colleagues who served with the appellant in the European theater, stating that his condition deteriorated in service. R. at 260, 266, 268. In December 1965 the BVA denied the claim, stating that the additional evidence did not establish a new factual basis upon which to award benefits. R. at 280–85.

In November 1990, in an attempt to reopen his claim, the appellant submitted additional evidence. R. at 289–95. He argued that his induction papers "clearly establish [a] minimal objective disability, ¾ inch shortening and *no* limitation of motion upon entering military service. By 1946 my leg had shortened by 2 inches." R. at 295. Furthermore, the appellant alleged CUE, arguing that VA had failed to apply the presumption of aggravation provided in 38 C.F.R. § 3.306 and that VA never met the standard of "clear and unmistakable evidence" required to prove that the "increase in disability is due to the natural progression of [his] condition." R. at 294–95. A February 1991 RO decision determined that no CUE existed in prior denials of service connection for Legg–Perthes disease of the left hip and that "[t]he

cited evidence [did] not constitute a new factual basis with respect to establishing service-connection by way of aggravation for Legg[-]Perthes disease." R. at 331, 334. The appellant filed a Notice of Disagreement and a Statement of the Case was issued. R. at 340–45. An appeal was submitted. R. at 347–53. In January 1993 the BVA denied reopening of the claim because the appellant had not submitted new and material evidence. *Mykles*, BVA 93–00506, at 6–7. In addition, the BVA held that no CUE existed in prior RO and BVA adjudications and cited a medical treatise to support the decision that his current medical condition was due to the natural progression of the disease. *Id.* at 7–8. The appellant filed a timely appeal with this Court.

## II. ANALYSIS

### A. The Appellant's Clear and Unmistakable Error Claim

■ The Court notes that in his brief, the appellant alleges that the 1957 RO decision and the Board's 1958 and 1963 decisions were the product of CUE. The appellant requests a reversal of the 1993 BVA decision or in the alternative a remand to the BVA on the issue of CUE. However, a recent decision by the United States Court of Appeals for the Federal Circuit makes a remand on the issue of CUE unnecessary. The Federal Circuit held that this Court's authority to review CUE under 38 C.F.R. § 3.105(a) (1993) "relat[es] only to review of AOJ [agency of original jurisdiction] adjudicatory decisions and not to those of the Board." *Smith, supra.* Therefore, this Court lacks jurisdiction to review the appellant's allegations of CUE in the 1958 and the 1963 BVA decisions.

■ Similarly, the Court is without jurisdiction to review the appellant's allegations of CUE in the 1957 RO decision. The Federal Circuit in *Smith* noted that in the statutorily created VA structure:

the Board is an appellate authority, and the AOJs are trial-level adjudicators. This too tends to preclude the inference that the drafters of § 3.105(a) intended CUE review to apply to both Board and AOJ

decisions, since it would, oddly, permit an inferior to collaterally review the actions of a superior....

*Id.* at 1526. Therefore, to permit an AOJ to review a CUE claim which had been appealed to the BVA, would result in the "AOJ, the 'inferior' tribunal, reviewing a final decision of the Board, the 'superior' tribunal." *Duran v. Brown,* 7 Vet.App. 216, 224 (1994). In the case at bar, the appellant appealed the AOJ decision to the BVA which affirmed the AOJ decision. Therefore, the AOJ decision was subsumed by the BVA decision, and no claim of CUE under 38 C.F.R. § 3.105(a) exists as a matter of law with regard to that AOJ decision. *See Smith,* 35 F.3d at 1527; *Duran, supra; see also Talbert v. Brown,* 7 Vet.App. 352 (1995); 38 C.F.R. § 20.1104 (when a determination of the AOJ is affirmed by the BVA, the determination is subsumed by the final appellate decision). Thus, there is no CUE claim present for consideration by this Court.

## B.  Violation of the *Thurber* Doctrine

▪ The appellant also contends in his brief that the 1993 BVA decision utilized a medical treatise in denying his claim without affording the appellant prior notice and an opportunity to respond, in violation of *Thurber,* 5 Vet.App. at 126. Appellant's Brief at 20, footnote 12; Reply Brief at 9. The Secretary argues that the Board was citing the treatise to support the denial of service connection in the 1965 BVA decision and that any error is harmless error. Secretary's Brief at 24. Although the BVA decision was rendered prior to this Court's issuance of *Thurber,* the Court's decision established criteria which must be strictly observed. For the reasons set forth below, however, the Court holds that any violation of the *Thurber* doctrine was harmless error.

This Court held in *Thurber* that when the BVA, in rendering a decision, relies on a medical treatise obtained after the issuance of the most recent SOC or Supplemental SOC with respect to the claim at issue, the BVA is required to provide the appellant with reasonable notice of the medical treatise and of the reliance proposed to be placed on the treatise, as well as a reasonable opportunity for the appellant to respond to the medical treatise. *Thurber,* 5 Vet.App. at 126, *see Austin v. Brown,* 6 Vet.App. 547, 551 (1994) (BVA decision which relies upon medical opinion must allow the appellant an opportunity to submit additional evidence in response); *Houston v. Brown,* 5 Vet.App. 245, 247 (1993) (BVA must provide the appellant with a reasonable notice of any evidence, medical texts or treatises to be relied upon in rendering its decision, and a reasonable opportunity to respond).

However, in the case at bar, the BVA used the medical treatise to support the reasons and bases of the 1965 BVA decision in denying a claim of CUE in prior BVA adjudications. Since under *Smith* there is no CUE claim, any violation of *Thurber* can only be harmless error. *Yabut v. Brown,* 6 Vet.App. 79, 85 (1993) (the BVA's failure to provide notice of their intent to rely on a medical treatise which does not prejudice the case, cannot be considered harmless error); *see Quiamco v. Brown,* 6 Vet.App. 304, 310 (1994). The Court has taken "due account of the rule of prejudicial error" as required by 38 U.S.C. § 7261(b). *White v. Brown,* 6 Vet. App. 247, 252 (1994) (BVA citation of medical treatises without due notice to the appellant was harmless error, and therefore, remand is not required where no new and material evidence was submitted and the claim should not have been reopened). Therefore, because no CUE claim exists, the citation to the medical treatise is superfluous and, we will affirm the Board's decision. *Flynn v. Brown,* 6 Vet.App. 500, 506 (1994); *Yabut,* 6 Vet.App. at 85.

## III.  CONCLUSION

For the reasons stated above, the January 11, 1993, decision of the BVA is affirmed as to the *Thurber* issue and dismissed for lack of jurisdiction as to the CUE claim.