**Marie E. MARLOW, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 98–113.**

United States Court of Appeals for Veterans Claims.

Argued July 21, 1999.

Decided Sept. 1, 1999.

Kenneth S. Kaufman, for the appellant.

Michael R. Smalls, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Carolyn F. Washington, Deputy Assistant General Counsel, were on the brief, for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

NEBEKER, Chief Judge:

The appellant, Marie E. Marlow, appeals the October 1, 1997, decision of the Board of Veterans' Appeals (BVA or Board) which determined that she is not entitled to payment of special monthly compensation benefits from May 12, 1946, to March 23, 1980. Mrs. Marlow seeks payment of these benefits, which were due to her deceased father, veteran Albert A. Mokal, when he died in

August 1992. The issues on appeal are whether a deceased veteran's right to receive retroactive compensation benefits for a period earlier than two years prior to his death, survives the veteran's death, and—if so—whether the veteran's adult daughter, as personal representative of his estate, is an eligible recipient of the retroactive benefits, or whether there are accrued benefits she may claim in her own right under 38 U.S.C. § 5121(a). We must answer these questions in the negative. Because as a matter of law we can reach no contrary result, we will affirm the BVA's decision.

To begin, we note that redress for the family of this deceased veteran lies not in the law as written, but with those charged with legislative or equitable grace. The conceded errors, *see* Record (R.) at 336–39, made at a time when the law could have afforded to the veteran his just due, have been insulated from remedy under existing law, but cry out for equitable correction by those having responsibility for such actions.

## I. FACTS

The facts of this case are set forth in considerable detail in the Court's 1993 decision remanding the case (*Marlow v. Brown,* 5 Vet.App. 146 (1993)), and in *Marlow v. West,* 11 Vet.App. 53 (1998). That more detailed discussion will not be repeated, but is incorporated here by reference. However, the salient facts will be recapitulated here, briefly.

Mr. Mokal suffered a grievous head wound in battle during World War II. Residual disabilities from his injury were profound, and he was service connected and rated at 100% from the time of his discharge in May 1946. R. at 4–5. His profound disabilities qualified him for special monthly compensation under applicable provisions of 38 U.S.C. § 1114 (previously 38 U.S.C. § 314), at a level above that for a scheduler combined rating of 100%. However, between his date of discharge and 1980, he was under compensated. He was paid special monthly compensation under section 1114(m) for loss of use

of one hand and one foot based on spastic paralysis resulting from his head injury, and for aphonia (inability to speak, *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 105 (28th ed.1994) (hereinafter DORLAND'S)). *See* 38 U.S.C. § 1114(m). However, between 1946 and 1980, VA regional office rating officers failed to consider his aphasia (loss of spoken or written language and comprehension, *see* DORLAND'S 105), which rendered him so helpless as to require regular aid and attendance under section 1114(*l*), independent of the disability for which he was compensated under section 1114(m). *See* 38 U.S.C. § 1114(*l*).

In 1948, his compensation for loss of use of his right arm and leg was increased to the somewhat higher rate provided under section 1114(n). However, the combination of entitlements under both subsections (*l*) and either (m) or (n) of section 1114 would have entitled him to compensation under subsection (*o*) of that section. Subsection (*o*) provides a considerably higher level of special monthly compensation where "the veteran, as the result of service-connected disability, has suffered disability under conditions which would entitle such veteran to *two or more* of the rates provided in one or more subsections (*l*) through (n) of this section, *no condition being considered twice in the determination.*" 38 U.S.C. § 1114(*o*) (emphasis added). As the Court held in *Marlow v. Brown, supra,* because the rating decision in 1948 (that had raised Mr. Mokal's compensation from that provided under section 1114(m) to that under subsection (n)) was the product of clear and unmistakable error in not granting the still higher compensation rate warranted by subsection (*o*), Mrs. Marlow's father was due retroactive benefits from the time of his discharge in 1946 until the error was rectified in March 1980. *See* 5 Vet.App. at 151.

Since 1980, Mrs. Marlow has assiduously sought these retroactive benefits on behalf of her father (until his death in 1992), and on behalf of his estate since his death. *See, e.g.,* R. at 182–225. Her efforts before VA culminated in the October 1, 1997, BVA decision now on appeal. R. at 1–9. The Board concluded that her father's rights to retroactive monthly compensation terminated with his death; that 38 U.S.C. § 5121 would permit payments of accrued benefits to an eligible survivor; that such accrued benefits are limited to those due and unpaid for the two years immediately preceding the veteran's death; that her deceased father had been receiving full compensation under section 1114(*o*) for the twelve years prior to his death; and that, accordingly, as a matter of law, she was not entitled to retroactive special monthly compensation benefits for the period from 1946 to 1980. R. at 7–8. This appeal followed.

## II. ANALYSIS

■ Our analysis is necessarily brief on the issue whether the claim for payment of the total amount of retroactive benefits survives the death of Mrs. Marlow's father. The U.S. Court of Appeals for the Federal Circuit, in a related proceeding, has conclusively decided that it does not survive him. *Marlow v. West,* 1999 WL 594311, No. 98–7083, 1999 U.S.App. LEXIS 18437 (Fed.Cir. Aug. 9, 1999). In 1998, this Court dismissed Mrs. Marlow's appeal from a September 13, 1995, decision of the Board which, inter alia, had remanded to the VA regional office the issue of whether there is entitlement to an award of retroactive benefits compensation in view of clear and unmistakable error in an October 1948 rating decision. *Marlow,* 11 Vet.App. at 55 (citing 38 U.S.C. § 7252(a) as precluding review of non-final BVA decisions). She appealed this decision to the Federal Circuit.

On August 9, 1999, the Federal Circuit issued an opinion affirming this Court's decision in part and dismissing Mrs. Marlow's appeal, in part, for lack of jurisdiction. *Marlow,* 1999 WL 594311, No. 98–7083, 1999 U.S.App. LEXIS 18437. While this opinion has been designated by the Federal Circuit as not citable as precedent pursuant to Rule 47.6 of the Federal Circuit's Rules of Practice, it is binding here and must be cited because its effect is to preclude relitigating

this issue and to establish the law of the case. *See* FED. CIR. R. 47.6(b) (including these uses among limited exceptions to Federal Circuit Rule barring citation to non-precedential opinions). Here, the same issue—whether survivors may be awarded benefits to which a deceased veteran would have been entitled had he lived—is being litigated by the same parties on the same underlying facts. The Federal Circuit, in addressing Mrs. Marlow's suggestion that she might pursue her father's appeal because this Court in 1993 had allowed her substitution as the appellant after her father's death, stated:

> We have held that, under [the statutory] scheme [providing veterans' disability benefits], "a veteran's claim to disability benefits terminates at death." *Richard ex rel. Richard v. West,* 161 F.3d 719, 722 (Fed. Cir.1998); *see also Haines v. West,* 154 F.3d 1298, 1301 (Fed.Cir.1998). This statutory interpretation was not an intervening change in a statute or regulation; it was merely a recognition of what the law mandated at the time Marlow initiated her father's claim. We recognize that Congress intended that the system of adjudicating veterans' claims be paternalistic. *See Collaro v. West,* 136 F.3d 1304, 1309–10 (Fed.Cir.1998). However, "a party 'cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision.'" *Haines,* 154 F.3d at 1301 (quoting *Smith v. Brown,* 35 F.3d 1516, 1526 (Fed.Cir.1994)). The statutory scheme makes clear that [Mrs.] Marlow may not pursue her father's claim after his death.

*Marlow,* 1999 WL 594311, No. 98–7083, 1999 U.S.App. LEXIS 18437. The parties are bound by this holding, and we must apply it here.

■ The only legal question remaining is whether there are accrued benefits that Mrs. Marlow may claim in her own right. Certain qualifying survivors may seek payment of those benefits which were "due and unpaid" at the time of the veteran's death. 38 U.S.C. § 5121(a). However, the statute also limits payment to those benefits that were due and unpaid "for a period not to exceed two years." *Id.* The "two years" are limited to those immediately preceding the veteran's death. *Id.; Haines,* 154 F.3d at 1300. It is indisputable that Mrs. Marlow's father was fully compensated during the two years prior to his death. Accordingly, as a matter of law, there are no accrued benefits for Mrs. Marlow to claim, and the BVA did not err in so concluding. Because there is no legal basis to claim accrued benefits, we do not reach the issue whether Mrs. Marlow is a qualifying survivor under section 5121(a), which limits qualifying survivors to the deceased veteran's spouse, child (as defined in 38 U.S.C. § 101(4)(A)), or dependent parents; or the person who bore the expenses of the veteran's last sickness and burial, who may be paid only so much of the accrued benefits as is necessary to reimburse that person for the expenses.

Although the dispositive law is all too clear, we are constrained to comment on Mrs. Marlow's twelve-year effort to get her veteran father's full benefits before he died. The record is replete with examples of VA's disingenuous refusal to acknowledge the specific nature of the claim for benefits under section 1114(o) and to deny what is manifestly obvious in the record and was clearly articulated in Mrs. Marlow's communications to VA. *See, e.g.,* R. at 38–42, 182–202. VA ultimately corrected Mr. Mokal's ratings from the time of his discharge, but only after it was too late, as a matter of law, to pay him. R. at 336–38. This is a case that gives credence to those who don't believe that VA is committed to the spirit expressed in the words of General Omar Bradley, the Administrator of Veterans' Affairs from 1945 to 1947: "We are dealing with veterans, not procedures; with their problems, not ours."

As Mrs. Marlow's counsel candidly acknowledged during oral argument, her claim is equitable in nature and cannot, given the current state of the law, be sustained by this Court of law. This is a case that causes one to understand the frustration of Charles Dickens' character, Mr. Bumble, when he proclaimed, "[T]he law is a[n] ass, a[n] idiot."

CHARLES DICKENS, OLIVER TWIST ch. 51 (1837). A claim for equitable relief has been presented to the Secretary under 38 U.S.C. § 503(a), and we trust that Mrs. Marlow's claim will receive careful consideration. This Court is indebted to counsel for both parties. Their pleadings and oral argument have assisted the Court greatly.

### III. CONCLUSION

On consideration of the record on appeal, the pleadings, and oral argument, the Court holds that the October 1, 1997, BVA decision must be, and is, AFFIRMED.