**Thomas R. DONOVAN, Claimant–Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 98–7019.**

United States Court of Appeals, Federal Circuit.

Oct. 26, 1998.

Robert V. Chisholm, Chisholm & Chisholm, of Providence, RI, argued for claimant–appellant.

Agnes Brown, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for respondent–appellee. With her on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director. Of counsel on brief were Donald E. Zeglin, Deputy Assistant General Counsel, and David J. Barrans, Staff Attorney, U.S. Department of Veteran Affairs, of Washington, DC.

Michael P. Horan, Associate General Counsel, Paralyzed Veterans of America, for amicus curiae Paralyzed Veterans of America.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal presents a question about the meaning and effect of a regulation of the Department of Veterans Affairs (VA), 38 C.F.R. § 3.105(a) (1997), providing that otherwise final determinations of the agency's regional offices will be "reversed or amended" if there is "clear and unmistakable error." The appellant Donovan contends that under this provision he may challenge a final decision of the VA regional office denying his claim for a service-connected disability, despite an intervening decision of the VA Board of Veterans' Appeals that rejected his claim. The Court of Veterans Appeals denied Donovan's contention. We agree, and therefore affirm.

I

The underlying facts are undisputed. Donovan served in the Army from 1941 to 1945. In 1946 he applied to the VA (then known as the Veteran's Administration) for benefits for various disabilities, including "Stomach Condition," "Headaches," and "Nervous Condition." A July 1947 VA physical examination indicated that Donovan had gastric neurosis and psychoneurosis secondary to gastrointestinal disturbance.

In 1947, the VA regional office, where Donovan had filed his claim, denied the claim based on lack of "service responsibility for gastric neurosis and psychoneurosis." Donovan did not appeal that decision to the Board of Veterans' Appeals, and the decision became final one year later. See 38 U.S.C. § 7105(c) (1994). That provision further provides that "the claim will not thereafter be reopened or allowed, except as otherwise provided by regulations not inconsistent with this title." A VA regulation provides for reconsideration of such final claims if they

involve "clear and unmistakable error." 38 C.F.R. § 3.105(a). In addition, the Secretary must reopen and review a claim if "new and material evidence is presented or secured." 38 U.S.C. § 5108 (1994).

Thirty-eight years later, in 1985, Donovan filed another claim for benefits, this time based on Delayed Post Traumatic Stress Disorder (Stress Disorder). After a VA psychiatric examination concluded that Donovan did not have that condition, the regional office denied the claim. This time Donovan appealed the denial to the Board of Veterans' Appeals.

The VA conducted another psychiatric examination, which also concluded that Donovan did not suffer from Stress Disorder. After a hearing, the Board in May 1988 held that "[e]ntitlement to service connection for a chronic acquired psychiatric disability, to include post-traumatic stress disorder, is not established," and denied the appeal. The Board noted that in 1947 Donovan had been "denied entitlement to service connection for gastric neurosis and a secondary psychoneurosis," that "[i]n 1985, the claim was reopened and was expanded to include consideration of entitlement to service connection for post-traumatic stress disorder," and that "the Board has reviewed the entire evidence of record and is making a de novo determination."

The Board stated that "[a] review of the service medical records reveals normal psychiatric status" and that in a VA 1947 examination:

[t]he veteran exhibited no asocial or psychotic trends. He displayed no particular tension or apprehension. He was primarily concerned with nausea and vomiting of several years' duration. The diagnoses were gastric neurosis and secondary psychoneurosis.

The Board concluded:

[t]he Board has carefully considered all the evidence of record and is mindful of the requirement that all reasonable doubt must result in favor of the veteran. While we do not doubt that the veteran experienced traumatic events during the war, the evidence since his discharge from service

does not demonstrate that he has a psychiatric disorder, including post-traumatic stress disorder, as a result of that service. Two recent special psychiatric examinations found no psychiatric disorder.

The Board found that "[a] chronic acquired psychiatric disorder was not present during active service," and concluded that "[a] chronic acquired psychiatric disability, to include post-traumatic stress disorder, was not incurred in or aggravated by active service."

Donovan tried again in April 1991, this time with more success. He asserted that it was "clear and umistakable error to deny service connection" for his "chronic acquired psychiatric disability," in view of the "diagnosis of psychoneurosis" made in July 1947, the "complaints" shown by the record, and his "heroic achievement in connection with military operations against an enemy of the United States," for which he was awarded a bronze star.

Two VA psychiatric examinations then concluded that Donovan had Stress Disorder. The regional office reopened his claim—presumably because of this new and material evidence—and granted service connection for Stress Disorder with disability payments effective November 5, 1991.

Donovan then requested that the payments be made retroactive to July of 1947, "when the diagnosis of psychoneurosis was made." The regional office denied that request and Donovan appealed that ruling to the Board of Veterans' Appeals which, after an informal hearing, affirmed in 1995. The Board found that "[T]he claim of clear and unmistakable error in the August 4, 1947 RO denial of service connection for a psychoneurosis does not have legal merit." The Board stated that in its 1988 decision:

the Board noted that a claim for service connection for a psychoneurosis was denied by the RO in August 1947. The veteran did not appeal the 1947 RO decision so, as a consequence, it became final. *See* 38 C.F.R. § 20.1103 (1994). The Board also found that, neither the evidence available when the RO took action in 1947, nor that available thereafter, provided a factual basis for granting the claim of service connection, in effect denying the claim

of service connection on the merits. Indeed, it was expressly noted that the claim was being reviewed on a *de novo* basis (i.e., based on the entire record). Therefore, the Board now concludes that the May 1988 decision denying service connection was not limited to the question of whether a claim should be reopened, but extended to an analysis of the merits of the underlying question of service connection. The significance of the May 1988 Board denial is that, unlike RO decisions, a collateral attack on a final Board decision under the auspices of rules governing claims of clear and unmistakable error may not be made. *Smith v. Brown,* 35 F.3d 1516 (Fed.Cir. 1994). If the issue addressed in the 1947 RO decision is treated as encompassing the question of service connection for a chronic acquired psychiatric disability, as the Board apparently did in 1988, the prior unappealed RO denial would be considered as having been, in effect, subsumed by the May 1988 Board denial on the merits and likewise immune from collateral attack under a theory of clear and unmistakable error.

The Board cited a precedential opinion of its general counsel which bound it, *see* 38 U.S.C. § 7104(c) (1994), as ruling that "a claim of clear and unmistakable error under 38 C.F.R. § 3.105(a) concerning a final, unappealed RO decision may not be considered where the Board has previously reviewed the entire record of the claim following subsequent reopening and has denied the benefit previously denied in the unappealed decision." The Board held, however, that the proper date for the beginning of benefits was May 1, 1991 and not the later November date the regional office used.

A divided Court of Veterans Appeals affirmed. *Donovan v. Gober,* 10 Vet.App. 404 (1997). The court stated:

the 1988 BVA decision made a de novo review and essentially reviewed the 1947 RO decision. Therefore, the Court finds that the 1947 RO decision was subsumed by the 1988 BVA decision and that the BVA was correct in denying the appellant's claim for CUE as no CUE existed as a matter of law.... Even assuming that a

CUE claim is not precluded by *Smith [v. Brown,* 35 F.3d 1516 (Fed Cir.1994) ], on the theory that the 1988 BVA decision did not limit its review to only the evidence before the RO in 1947, a determination by the Court of the existence of CUE since 1947 would of necessity mandate service connection to the present time. Such a determination would, in effect, overturn the 1988 BVA decision. The Court, however, is precluded from reviewing a BVA decision that is not the subject of this appeal. *See* 38 U.S.C. §§ 7252(a), 7266(a)(1).

*Id.* at 408–09.

Judge Steinberg, dissenting, would have reversed and remanded to the Board of Veterans' Appeals to adjudicate the claim of "clear and unmistakable error" in the 1947 regional office decision. In his view, because the Board's 1988 decision also considered new negative evidence regarding Donovan's claimed disability, that "decision thus has no bearing upon whether the RO committed CUE in 1947.... An adjudication by an RO currently of a claim of CUE in the 1947 RO decision could not and would not produce the kind of collateral attack on the 1988 BVA decision about which the Federal Circuit expressed concern in *Smith,* because in that 1988 BVA decision the Board concluded only that, based upon the evidence *in 1988,* the veteran was not entitled to service connection *in 1988.* Hence, any RO adjudicating CUE could not consider the evidence newly presented in 1988 and would be concerned only with the veteran's entitlement in 1947 on the record then before the RO."

One month after the Court of Veterans Appeals entered its judgment, Congress enacted Pub.L. No. 105–111, 111 Stat. 2271 (1997) (codified at 38 U.S.C. §§ 5109A, 7111) (discussed below), dealing with correction of "clear and unmistakable error." Donovan then simultaneously filed a motion for reconsideration in light of the new statute and a notice of appeal to this court. The Court of Veterans Appeals denied that motion as moot, because the filing of the notice of appeal deprived the court of jurisdiction over the case. In a subsequent decision, the Court of Veterans Appeals ruled that Pub.L.

105–111 "does not affect the Court's decision[ ] in ... *Donovan.*" *Dittrich v. West,* 11 Vet.App. 10, 11 (1998), *appeal pending,* No. 98–7031 (Fed. Cir., argued Sept. 2, 1998).

## II

The question Donovan presents is whether, despite the 1988 Board decision denying his claim for a service-connected disability based on his psychiatric disorder, VA regulation 38 C.F.R. § 3.105(a) permits him now to challenge the regional office's 1947 decision for "clear and unmistakable error." We have jurisdiction to review that ruling under 38 U.S.C. § 7292(c) (1994), which gives us jurisdiction "to review and decide any challenge to the validity of any ... regulation or any interpretation thereof."

■ A. The pertinent portions of the VA regulation state:

> Previous determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a).

Although the 1988 Board decision did not use the words "clear and unmistakable error," we conclude that the Board determined that no such error infected the 1947 regional office's decision. The Board noted that it had "reviewed the entire evidence of record," which necessarily included the record relating to the 1947 decision, that it was "making a de novo determination," and that "the evidence since [Donovan's] discharge from service [in 1945] does not demonstrate that he has a psychiatric disorder including post-traumatic stress disorder, as a result of that [military] service." The Board described the results of the 1947 VA examination, found that "[a] chronic acquired psychiatric disorder was not present during active service," and concluded that "[a] chronic acquired psychiatric disability, to include post-traumatic stress disorder, was not incurred in or aggravated by active service."

We therefore agree with the Board's conclusion in its 1995 decision that the Board's May 1988 decision denying service connection was not limited to the question of whether a claim should be reopened, but extended to an analysis of the merits of the underlying question of service connection.

> ... If the issue addressed in the 1947 RO decision is treated as encompassing the question of service connection for a chronic acquired psychiatric disability, as the Board apparently did in 1988, the prior unappealed RO denial would be considered as having been, in effect, subsumed by the May 1988 Board denial of the merits and likewise immune from collateral attack under a theory of clear and unmistakable error ... The May 1988 decision is a final decision of the Board denying, on the merits, a claim for service connection for a chronic acquired psychiatric disability, to include a psychoneurosis and PTSD.

As the Court of Veterans Appeals explained:

> the 1988 BVA decision made a de novo review and essentially reviewed the 1947 RO decision. Therefore, the Court finds that the 1947 RO decision was subsumed by the 1988 BVA decision and that the BVA was correct in denying the appellant's claim for CUE as no CUE existed as a matter of law.

In sum, although in its 1988 decision the Board, on the basis of the augmented record before it, held that Donovan had not established "service connection for a chronic augmented psychiatric disorder," it also ruled that the record before the regional office in 1947 did not show error, much less "clear and unmistakable error" in that office's decision in that year denying Donovan's claim based upon "gastric neurosis and psychoneurosis." That is precisely the issue that Donovan now seeks to litigate in the present case. The ruling in the 1993 Board decision and in the decision of the Court of Veterans Appeals that the Board's 1988 decision rejecting Donovan's claim "subsumed" the 1947 regional

office decision appears to be a short-hand statement summarizing the foregoing reasoning.

The 1988 Board decision bars him from relitigating this issue for several reasons. First, if the regional office were now to attempt to decide that question *de novo*, it would be reviewing a decision of the appellate tribunal that customarily reviews the decisions of the regional offices. As the Court of Veterans Appeals pointed out in the present case, a regional office "must not be placed in the anomalous position of reviewing the decision of the BVA, a superior tribunal." See *Smith,* 35 F.3d at 1526, where this court stated that it would be "odd[ ]" to "permit an inferior [the regional office] to collaterally review the actions of a superior [the Board], at least as an initial matter."

Second, the governing statute makes Board decisions "final," unless the Chairman of the Board orders reconsideration, 38 U.S.C. § 7103(a) (1994), (or if, as the new statute permits (see below), the Board decision itself is challenged for "clear and unmistakable error"). The Chairman did not order reconsideration of the Board's 1988 decision. Moreover, except where "new and material evidence is presented or secured," 38 U.S.C. § 5108 (1994), "when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b) (1994). At oral argument Donovan stated that his claim of "clear and unmistakable error" in the 1947 regional office's decision was based solely on the evidence presented to that office at that time, and not upon any new evidence. Permitting reconsideration by the regional office of that office's 1947 decision would violate the finality of the 1988 Board decision that there was no "clear and unmistakable error" in the 1947 decision.

Third, nothing in 38 C.F.R. § 3.105(a) indicates, or even suggests, that in permitting otherwise final determinations to be reopened or amended for "clear and unmistakable error," it was intended to permit departure from the settled principles governing the administration of veterans benefits claims just discussed. To the contrary, the right to

reopen claims for such error is subject to those principles, and as we have indicated, those principles bar consideration at this time of the claim of "clear and unmistakable error" in the 1947 Board decision.

■ B. Donovan contends that Pub.L. No. 105–111 "[s]upersedes" 38 C.F.R. § 3.105(a), and "[t]hus [n]ullif[ies] the [d]ecision [b]elow." He urges that the case should be remanded to the Court of Veterans Appeals for "review and application of" the new statute.

Pub.L. No. 105–111, however, made no change in the substantive standards in the regulation governing modifications of a regional office decision because of "clear and unmistakable error." It merely codified the prior regulation. See S.Rep. No. 105–157, at 4–5, 8 (1997); H.R.Rep. No. 105–52, at 1 (1997). Thus, if the Court of Veterans Appeals were to reconsider this case under the new statute, it would reach the same conclusion it reached under the regulation. Indeed, that court so indicated in *Dittrich,* where it stated that the new law "does not affect the Court's decision[ ] in ... *Donovan.*" 11 Vet.App. at 11.

The pertinent provisions of Pub.L. 105–111 state:

(a) A decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised.

(b) For the purposes of authorizing benefits, a rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.

(c) Review to determine whether clear and unmistakable error exists in a case may be instituted by the Secretary on the Secretary's own motion or upon request of the claimant.

(d) A request for revisions of a decision of the Secretary based on clear and unmistakable error may be made at any time after that decision is made.

Although more detailed than the regulation, the basic substantive provision in the statute is the same as that in the regulation. The regulation provides that "final and binding" decisions "will be accepted as correct" in the absence of "clear and unmistakable error," and that if such error is established, the decision "will be reversed or amended." The statute states that a decision of the Secretary may be revised for "clear and unmistakable error," and that if such error is established, the decision "shall be reversed or revised."

Although the statute, unlike the regulation, provides that a request for revision of a decision for "clear and unmistakable error" may be made "at any time after that decision is made," that provision relates only to the timing of such a request. It makes explicit what was implicit in the regulation: that there is no time-bar upon such requests. *See Smith,* 35 F.3d at 1527 (referring to "the unquestionable proposition that RO decisions always can be challenged for ancient CUE"). As a mere codification of the regulation, the provision does not permit something the regulation would not: a collateral challenge to a regional office decision after the Board has sustained it.

In a separate section, Pub.L. No. 105–111 also provides that a decision of the Board may be reviewed for "clear and unmistakable error." That provision was a reaction to our decision in *Smith,* 35 F.3d at 1526, which held that the "clear and unmistakable error" regulation applied only to regional office decisions and not to those of the Board. That change is irrelevant in this case because, as Donovan stated at oral argument, he asserts "clear and unmistakable error" only in the 1947 regional office decision and not in the subsequent Board decisions.

C. The Paralyzed Veterans of America has filed an amicus brief challenging the Board's reliance in its 1995 decision on the opinion of the VA's General Counsel. It asserts that the Board improperly applied that opinion retroactively. The argument was not made in the Court of Veterans Appeals, however, and we decline to consider it, particularly since the contention is made solely by an amicus and Donovan has not adopted or approved it. *See Russian River Watershed Protection Comm. v. City of Santa Rosa,* 142 F.3d 1136, 1141 n. 1 (9th Cir. 1998)

### CONCLUSION

The judgment of the Court of Veterans Appeals is *AFFIRMED.*