**Robert E. JONES, Claimant–Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Respondent–Appellee.**

No. 99–7031.

United States Court of Appeals, Federal Circuit.

Feb. 16, 2000.

Kenneth M. Carpenter, Carpenter Chartered, of Topeka, Kansas, for claimant-appellant.

Agnes M. Brown, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent-appellee. With her on the response were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the response were Donald E. Zeglin, Deputy Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

### *ORDER*

A petition for rehearing en banc was filed by the appellant, and a response thereto was invited by the court and filed by the appellee. The petition for rehearing en banc and response were referred first to the panel that heard the appeal, and thereafter, referred to the judges authorized to request a poll whether to rehear the appeal en banc. A poll was requested, and taken,

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition for rehearing en banc is granted.

(2) The judgment of the court entered on October 25, 1999, and reported in 194 F.3d 1345 (Fed.Cir.1999), is vacated and the opinion of the court accompanying the judgment is withdrawn.

(3) The case shall be referred to the panel that decided the case originally.

(4) Additional briefing and argument are not indicated at this time.

Circuit Judge GAJARSA, with whom Circuit Judge PAULINE NEWMAN joins, dissents in a separate opinion.

Dissenting opinion filed by Circuit Judge GAJARSA, in which Circuit Judge PAULINE NEWMAN joins.

On October 25, 1999, a panel of this court issued a decision affirming the October 9, 1998 decision of the Court of Appeals for Veterans Claims (the "CAVC"). *See Jones v. West,* 194 F.3d 1345 (Fed.Cir. 1999). Mr. Jones then petitioned the court for rehearing en banc. In the instant order, the court grants the petition, vacating the panel's decision, and refers the case back to the panel. Because the court, by this order, fails in its responsibilities to the veterans and misses an opportunity to review and curtail its ill-conceived judge-made law carried forth by the doctrine of delayed subsuming, I must dissent.

In veterans cases this court has stated that systemic justice and fundamental considerations of procedural fairness carry great weight. *See Hayre v. West,* 188 F.3d 1327, 1333 (Fed.Cir.1999). The doctrine of delayed subsuming avoids the fairness which should be inherent in the system. Unlike subsuming, which is grounded in 38 C.F.R. § 20.1104 (1999), the doctrine of delayed subsuming is not provided for in any statute or regulatory provision. It is solely a creature of judicial invention that lacks both legal and policy justification and is fundamentally flawed.

In the case at bar, Mr. Jones did not appeal a 1962 Regional Office ("RO") Decision denying his claim for a service-connected disability, which rendered the decision final and accordingly not subject to subsuming under 38 C.F.R. § 20.1104. Mr. Jones then reapplied for service-connection many years later. In 1993 the Board of Veterans' Appeals (the "Board") granted Jones service connection relief based on new and material evidence. In rendering this decision, the Board stated it was reviewing the entire record *de novo.* In *Donovan v. West,* 158 F.3d 1377 (Fed.Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1255, 143 L.Ed.2d 351 (1999), our court held that in conducting such a review, the Board is essentially reviewing the RO decision, as if on direct appeal, and therefore subsumes the initial RO decision. *See Donovan,* 158 F.3d at 1381–82. *Donovan* further explained that when the Board *sua sponte* reviews an RO decision *"de novo"* and finds no "error," it has essentially determined that no clear and unmistakable error ("CUE") in any form exists in the RO decision. Thus, this doctrine of delayed subsuming allows the Board to act on collateral review as if it is hearing a case on direct appeal (which it is not) and act as if it is hearing a collateral attack regarding CUE (when it is hearing a collateral attack based on new and material evidence).[1] *See also Dittrich v. West,* 163 F.3d 1349 (Fed.Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1499, 143 L.Ed.2d 653 (1999) (affirming the delayed-subsuming doctrine).

This legal fiction stands firmly grounded in quicksand. The Board, of course, cannot "act" as if it is hearing a direct appeal when it is hearing a collateral attack. Allowing delayed subsumption vitiates the finality of the unappealed RO decision as set forth in 38 U.S.C. § 7105(c) (1994) and 38 C.F.R. § 20.1103 (1999). When an unappealed RO decision becomes final, it cannot be reviewed on the merits *de novo* under the current statutory and regulatory scheme; it can only be reviewed during a

---

1. For example, the *Donovan* court stated that it agreed that the Board decision " 'denying service connection was not limited to the question of whether a claim should be reopened [i.e., a collateral attack], but extended to an analysis of the merits of the underlying question of service connection [i.e., a direct appeal of the original claim].' " *Donovan,* 158 F.3d at 1381. The court further noted that "[a]lthough the 1988 Board decision did not use the words 'clear and unmistakable error,' we conclude that the Board determined that no such error infected the 1947 [RO's] decision." *Id.*

collateral attack. In addition, when a collateral attack is brought with respect to new and material evidence, the Board cannot *sua sponte* transform that attack into a CUE attack. By allowing for delayed subsuming in this case, we are assuming that in 1993 the Board conducted a CUE analysis even though Mr. Jones raised no CUE arguments and the Board did not discuss CUE in its decision. In addition, we are assuming the Board considered *all possible* CUE arguments that Mr. Jones could ever think of raising and therefore all of his future CUE arguments are precluded with respect to the initial RO decision. In effect, our jurisprudence of delayed subsuming allows the Board to decide *sua sponte* to review the entire record *de novo* and consider all possible CUE claims without any argument by or notice to the veteran. Such a jurisprudence rests on baseless assumptions and fictions and therefore results in a keen injustice to the veteran who is supposed to be litigating his claim in a uniquely pro-claimant system. The doctrine of delayed subsuming places the interests of the veteran in considerable jeopardy by tampering with his or her right to judicial review with regard to CUE claims.

This abrogation of claimant rights is unwarranted not only as a matter of statutory, regulatory, and policy analysis but also with respect to case law that has resisted prior attempts by the Secretary to thwart rights to judicial review. The CAVC has held that the Board cannot refuse to rule on a claim properly appealed to it and thereby deny to a claimant a Board decision that can then be appealed to the CAVC. *See EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991). The CAVC has also noted that "where ... the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor the Board has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative." *Hamilton v. Brown,* 4 Vet.App. 528, 544 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994). The CAVC stressed:

> A contrary result would permit the RO or Board to act in a way that could prejudice a claimant's enjoyment of statutory and regulatory procedural rights (such as a detailed [statement of the case] under section 7105(d)) by deciding a claim on a record that had not been adequately developed.

*Id.* (citations omitted). Moreover, in *Sutton v. Brown,* 9 Vet.App. 553, 564 (1996) (citing *Bernard v. Brown,* 4 Vet.App. 384, 394 (1993)), the CAVC stated:

> [W]hen the Board addresses in its decision a question that has not been addressed by the RO, it must consider (1) whether the claimant has been given both adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and (2) whether, if such notice has not been provided, the claimant has been prejudiced thereby.

*See also Curry v. Brown,* 7 Vet.App. 59, 66–67 (1994). Thus, as a general matter, these decisions of the CAVC stand for the proposition that the Board should not consider issues not considered by the RO decision on appeal to it, and that if the Board does so, it should proceed only with the full and informed participation of the veteran.

When the Board reviews a request to reopen a claim for new and material evidence, it must necessarily review all of the evidence in the record to determine if the veteran has in fact presented "new and material evidence." *See Hodge v. West,* 155 F.3d 1356, 1363 (Fed.Cir.1998). This analysis, however, does not require—or al-

low—the Board to both (1) consider all possible CUE arguments *sua sponte* and (2) act as if it is on direct appeal and subsume the original RO denial. There is no reason for the Board to consider CUE *sua sponte* when the only issue before it regards new and material evidence. An award or denial of benefits based on new and material evidence does not determine the presence or absence of CUE in the initial, unappealed RO decision. If new and material evidence and CUE attacks required the tribunal to conduct the same analysis, then presumably Congress or the Secretary would require the veteran to bring all collateral attacks together. The current statutory and regulatory scheme does not require the veteran to bring all possible collateral attacks at the same time and we should not allow the Board to essentially force the veteran to bring all collateral attacks at once. Administrative adjudication of rights without the veteran's full and fair participation results in a fundamental unfairness to the veteran and an impermissible abrogation of the right to judicial review.

Moreover, the concerns justifying the doctrine of delayed subsuming as set forth in *Dittrich* and *Donovan* are illusory. These opinions are concerned that (1) the RO would be reviewing a Board decision if the CUE claim were brought at the RO level with respect to the original RO denial[2] and (2) the finality of Board decisions would therefore be vitiated.[3] These concerns, however, disappear once we acknowledge what the Board has properly adjudicated and what the Board has not adjudicated. For example, in Mr. Jones' case, once we dismiss the faulty assumption that the 1993 Board was capable of considering all possible CUE arguments, then we do not have the problem of a lower tribunal (the RO) reviewing the final decision of higher tribunal (the Board) on the same CUE issue because CUE was not before the 1993 Board. If we acknowledge that the 1993 Board only had the issue of new and material evidence before it, then Mr. Jones can bring his CUE claim because it was not litigated before the Board. If we adhere to the statutory and regulatory scheme, then we must acknowledge that the unappealed RO decision is final and can only be reviewed by collateral attack and not subsumed as if on a fictional direct appeal. If Mr. Jones wins on his claim that there was CUE in the 1962 RO Decision, this would not be inconsistent with his award of service connection in 1993 when he presented new and material evidence. Even if Mr. Jones had not been awarded service connection in 1993 under the new and material evidence standard, that would not be inconsistent with a finding of CUE in the 1962 RO Decision under the CUE standard.

In sum, this court should have considered *en banc* the adoption of the delayed-subsuming doctrine. I submit that the doctrine is of recent vintage and courts should generally be reluctant to overturn precedent without allowing it to percolate and finding its own level of acceptance. However, this doctrine has no basis in

---

2. For example, *Donovan* justified the doctrine of delayed subsuming on the basis that "if the [RO] were now to attempt to decide that question *de novo*, it would be reviewing a decision of the appellate tribunal that customarily reviews decision of the regional office." *Donovan*, 158 F.3d at 1382. Similarly, *Dittrich* stated that the veteran was improperly requesting that "the [RO] collaterally review the Board's ... decision." *Dittrich*, 163 F.3d at 1353.

3. *Donovan*'s second justification for the doctrine of delayed subsuming was that "the governing statute makes Board decisions 'final,'" and a claim may not be thereafter reopened and allowed on the same factual basis. *Donovan*, 158 F.3d at 1382. Similarly, *Dittrich* also focused on the finality of Board decisions, acknowledging that "[a]fter the Board has denied a claim for benefits, a[n][RO] ... cannot thereafter consider or grant a claim upon the same factual basis." *Dittrich*, 163 F.3d. at 1351.

statute or regulation. It rests on baseless assumptions and legal fictions. It does not help promote the policies underlying the veterans' pro-claimant system. Given these features, the doctrine should be put to rest rather than given continued vitality by our court.